UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LINDA L. STARKE COLSTEN, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | No. 1:20-cv-03104-JMS-DML |
| | ) | |
| MUNCIE SANITARY DISTRICT, | ) | |
| | ) | |
| *Defendant*. | ) | |

**ORDER**

Plaintiff Linda L. Starke Colsten seeks recovery from her former employer, the Muncie Sanitary District (the "District") for alleged violations of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621, the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101, and the Family and Medical Leave Act (the "FMLA"), 29 U.S.C. § 2601. [Filing No. 1-1.] The District has filed a Motion for Summary Judgment, [Filing No. 28], which is ripe for the Court's review.

**I.**
**STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable

to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence."  S.D. Ind. L.R. 56-1(e).  And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence."  *Id.*  The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant.  *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h).  Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion.  Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standards detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

### A. Ms. Colsten's Employment with the District

The District is a "special unit of government" that was created under Ind. Code. § 36-9-25. [Filing No. 28-3 at 1.] The District is a "distinct legal entity from the City of Muncie, as it is independently funded and budgeted, and as it conducts all personnel and financial transactions with the City on an arm's length basis." [Filing No. 28-3 at 1.] The District is governed by the Board of Sanitary Commissioners ("the Board") and has approximately 141 employees. [Filing No. 28-3 at 2.] The Board reviews the District's employment needs "on an ongoing basis" to determine which positions "may be eliminated from a cost-savings and efficiency perspective." [Filing No. 28-3 at 2.] The Board delegated the authority to make personnel changes, including eliminating positions, to William Smith, the Board President. [Filing No. 28-3 at 2.]

The District has nine departments: (1) GreenLine; (2) Bureau of Water Quality ("BWQ"); (3) Engineering; (4) Recycling; (5) Sanitation; (6) Sewer Maintenance; (7) Stormwater Management; (8) Water Pollution Control; and (9) Utility Billing. [Filing No. 28-3 at 1-2.] The BWQ Department is "dedicated to improving the water quality of the White River," and had less than twenty employees during Ms. Colsten's employment. [Filing No. 28-1 at 2-3.]

Ms. Colsten began working for the District in the BWQ Department in 1975 until her termination on November 10, 2019, with a short break in 1977. [Filing No. 28-1 at 1.] Ms.

Colsten's role was referred to as both the Secretary and the Office Manager at different points during her employment with the District, but her responsibilities did not change. [Filing No. 28-1 at 1.] Those responsibilities included answering telephones, greeting and assisting visitors, various clerical duties, and assisting with payroll. [Filing No. 28-1 at 4-5.]

Prior to her termination, Ms. Colsten reported to Rick Conrad, the Director of the BWQ Department. [Filing No. 28-1 at 23-24.] Ms. Colsten consistently received positive performance evaluations from her supervisors in the BWQ Department. [Filing No. 28-2 at 100-109; Filing No. 28-2 at 112-116; Filing No. 28-2 at 121-127; Filing No. 28-2 at 131-135.]

### B. Ms. Colsten's Use of FMLA Leave

During her employment, Ms. Colsten was approved for FMLA leave on both an intermittent and consecutive basis. [Filing No. 28-1 at 11-12; Filing No. 28-1 at 14-16; Filing No. 28-2 at 120-130.] Ms. Colsten was diagnosed with Chronic Obstructive Pulmonary Disease ("COPD"), [Filing No. 28-1 at 23-24], and in March of 2017, Ms. Colsten was approved for intermittent FMLA leave when she had difficulty breathing or needed breathing treatments, [Filing No. 28-1 at 11-14; Filing No. 28-2 at 109-111].

In March of 2018, Ms. Colsten was also approved for FMLA leave to recover from surgery for a hiatal hernia. [Filing No. 28-1 at 16; Filing No. 28-2 at 120.] Beginning in April of 2019, Ms. Colsten took several weeks of FMLA leave to recover from pneumonia. [Filing No. 28-1 at 15; Filing No. 28-2 at 128-130.] Later that year, Ms. Colsten again received FMLA leave after she broke her femur and pelvic bone. [Filing No. 28-1 at 10-11.] Ms. Colsten returned to work on November 4, 2019. [Filing No. 28-1 at 20.]

### C. The Elimination of Ms. Colsten's Position

In November of 2019, Mr. Smith informed Mr. Conrad that the Board was considering eliminating several positions and inquired "whether the BWQ office would be able to manage if the secretarial position was eliminated." [Filing No. 28-3 at 1.] According to Ms. Smith, the BWQ Department does not "receive a large volume of calls or visitors," and "updated technology and systems had rendered some of the secretary's responsibilities obsolete, and the remaining clerical duties were somewhat minimal." [Filing No. 28-3 at 1.] Ms. Smith also asserts that "[t]here was no consideration of Ms. Colsten's age or any medical issues relative to the job elimination" but, rather, "[t]he focus in considering eliminating the BWQ secretarial position was on cutting costs and increased efficiencies and the fact that the role was largely redundant." [Filing No. 28-1 at 2.]

On November 15, 2019, Mr. Smith informed Mr. Conrad that he had decided to eliminate the BWQ Department's secretary position. [Filing No. 28-3 at 3.] Shortly thereafter, Mr. Smith informed Ms. Colsten was that her position was being eliminated, effective immediately. [Filing No. 28-1 at 21; Filing No. 28-3 at 3.] He also informed Ms. Colsten that, if she preferred, she could alternatively retire or resign, and that "the District would not challenge any claims she made for unemployment compensation benefits." [Filing No. 28-3 at 2.]

Ms. Colsten's duties then were absorbed by Jill Harris, who held a similar position in the District's "wastewater plant." [Filing No. 28-1 at 25.] Ms. Harris was in her forties, is not disabled, and had no known usage of FMLA leave. [Filing No. 28-1 at 5.] At the time that her position was eliminated, Ms. Colsten was 71 years old. [Filing No. 28-1 at 24.]

5

### D. This Lawsuit

Ms. Colsten filed this lawsuit on November 2, 2020 in Delaware Circuit Court. [Filing No. 1-1.] The District then removed the case to this Court pursuant to 28 U.S.C. § 1441. [Filing No. 1.] The District subsequently filed a Motion for Summary Judgment. [Filing No. 28.]

## III.
### DISCUSSION

The District argues that summary judgment is appropriate with respect to Ms. Colsten's ADEA and ADA claims because: (1) Ms. Colsten did not exhaust her administrative remedies; and (2) Ms. Colsten failed to establish that the reason it gave for Ms. Colsten's termination was pretextual. [Filing No. 29 at 9-14.] With respect to Ms. Colsten's FMLA claim, the District argues that summary judgment is appropriate because Ms. Colsten has failed to demonstrate "any evidence of any causal nexus" between her use of FMLA leave and the elimination of her position. [Filing No. 29 at 8-9.] The Court will address each argument in turn.

### A. Exhaustion of Administrative Remedies

The District argues that Ms. Colsten failed to exhaust her administrative remedies with respect to her ADEA and ADA claims because Ms. Colsten filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against the City of Muncie, rather than the District. [Filing No. 29 at 8-9.] The District argues that "[s]trict adherence to the exhaustion requirement" is important because it allows "the EEOC and the employer the opportunity to settle the dispute" and gives "the employer some warning of the conduct about which the employee is aggrieved." [Filing No. 29 at 8-9 (citing *Lankford v. Borgwarner Diversified Transmission Prods.,* 2004 WL 540983, at *2 (S.D. Ind. Mar. 12, 2004) (internal quotations omitted)).]

Ms. Colsten responds that courts generally avoid "hypertechnical readings" of EEOC discrimination charges and "may excuse a [discrimination] claimant's failure to name a party in an EEOC charge." [Filing No. 34 at 2-3.] Ms. Colsten further argues that the District received notice of her EEOC Charge and provided a Position Statement in response. [Filing No. 34 at 3.]

The District replies that Ms. Colsten "wholly failed to comply with the purpose of the EEOC process by failing to name the District in her EEOC charge." [Filing No. 36 at 3.] Therefore, the District argues that Ms. Colsten's ADEA and ADA claims fail. [Filing No. 36 at 3.]

Prior to filing suit, an ADEA or ADA claimant must first file a charge of discrimination with the EEOC. 29 U.S.C. § 626(d)(1); 42 U.S.C. § 12117(a). A party not named as the respondent in the EEOC charge may not ordinarily be sued in a private civil action. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008) (citing *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 604 (7th Cir. 2001); *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989)). This requirement "gives the employer some warning of the conduct about which the employee is aggrieved and affords the EEOC and the employer an opportunity to attempt conciliation without resort to the courts." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (citation omitted).

However, the Seventh Circuit has instructed that an exception may exist where the "unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (citations omitted). The Seventh Circuit has further explained that "it is particularly inappropriate to undermine the effectiveness of [anti-discrimination] statutes by dismissing claims merely because the victim of the alleged discrimination failed to comply with the intricate technicalities of the

statute." *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 399 (7th Cir. 2019); *see also Johnson v. County of Cook*, 864 F. Supp. 84, 86–87 (N.D. Ill. 1994) (denying dismissal of suit against county and sheriff where EEOC charge named county department of corrections as employer).

Here, although Ms. Colsten erroneously named the City of Muncie as her employer in her EEOC charge, the EEOC received a lengthy response outlining the District's position regarding Ms. Colsten's allegations. [Filing No. 35-1.] The Court notes that while the response letter indicates that it is "intended to serve as a position statement on behalf of . . . the City of Muncie," rather than the District, the letter goes on to provide a substantive response on behalf of the District. [*See* Filing No. 35-1 at 5 ("[T]he District did not unlawfully discriminate or retaliate against Ms. Colsten and her charge should be dismissed with a no-cause finding.")] Further, the response letter was submitted by the District's counsel in the present case. [Filing No. 35-1.] Accordingly, the Court finds that the District was given adequate notice of Ms. Colsten's ADEA and ADA charges. *See Alam*, 709 F.3d at 666.

Therefore, the Court **DENIES** the District's Motion for Summary Judgment to the extent that it finds that the District is not entitled to summary judgment on Ms. Colsten's ADEA and ADA claims for a failure to exhaust her administrative remedies.

### B. The Merits of Ms. Colsten's ADEA Claim

The District argues that Ms. Colsten's ADEA claim fails because there is "no evidence that the District was motivated to discriminate against Ms. Colsten based on her age." [Filing No. 29 at 9.] The District further argues that there is "plenary evidence to support the District's legitimate, non-discriminatory reason for eliminating the secretarial position," and Ms. Colsten has not "identified any evidence of pretext [for discrimination] beyond her own self-serving speculation." [Filing No. 29 at 9.]

8

Ms. Colsten responds that her ADEA claim is subject to a mini-reduction in force ("mini-RIF") analysis because her position was absorbed by other employees outside her protected class. [Filing No. 34 at 4.]  Ms. Colsten argues that she has met her burden because her role, rather than Ms. Harris' role was eliminated, because of her age.  [Filing No. 34 at 4.]

The District replies that even Ms. Colsten has satisfied a prima facie case under the mini-RIF analysis, she has not "identified any evidence to rebut the District's legitimate, non-discriminatory reason for eliminating the secretarial position or to establish pretext."  [Filing No. 36 at 4.]

The ADEA makes it unlawful for employers to discriminate against employees who are 40 years old or older because of their age.  29 U.S.C. § 623.  "[U]nder the ADEA, it's not enough to show that age was a motivating factor," but rather a plaintiff "must prove that, but for [her] age, the adverse action would not have occurred."  *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018) (cleaned up).  "[T]he singular question that matters in a discrimination case is: Whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action."  *McDaniel v. Progress Rail Locomotive, Inc.,* 940 F.3d 360, 368 (7th Cir. 2019) (quoting *Johnson v. Advocate Health & Hospitals Corp.,* 892 F.3d 887, 894 (7th Cir. 2018)) (applying standard in ADEA case).

When a dismissed employee's duties are absorbed by another employee or employees, rather than eliminated, the Court applies a modified version of the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), also known as a mini-RIF analysis.  *Petts v. Rockledge Furniture LLC,* 534 F.3d 715, 725 (7th Cir. 2008).  The first three elements of the *McDonnell Douglas* prima facie case under a mini-RIF analysis are unaltered.  *Id.*

Therefore, the plaintiff must establish that: (1) she is a member of a protected class; (2) she performed in accordance with her employer's legitimate expectations; and (3) she was subjected to an adverse employment action. *Id.* However, under the mini-RIF analysis, the fourth element of the *McDonnell Douglas* framework is altered, and the plaintiff need not make a showing that "similarly situated" employees were treated better because "the inference of discrimination arises from the fact that [discharged employees] were constructively replaced by workers outside of the protected class." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000).

Once a prima facie case has been established, the burden shifts to the employer to rebut the prima facie case by "articulat[ing] some legitimate, non-discriminatory reason" for the employee's termination. *McDonnell Douglas,* 411 U.S. at 802. Then, the plaintiff may only prevail if she can show that the employer's response is merely a pretext for behavior actually motivated by discrimination. *See id.* at 792.

The parties do not dispute that Ms. Colsten's age qualifies her as a member of a protected class, that she performed in accordance with the District's legitimate expectations, or that her termination subjected her to an adverse employment action. [Filing No. 29; Filing No. 34; Filing No. 36.] Therefore, Ms. Colsten has established a prima facie case under the mini-RIF analysis.

Accordingly, the burden shifts to the District to articulate a legitimate non-discriminatory reason for Ms. Colsten's termination. The "mere production of [a] legitimate non-discriminatory reason for its action rebuts the presumption of discrimination created by the prima facie showing." *Rand v. C.F. Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir. 1994). The District has identified "cost savings and increased efficiencies" as the legitimate, non-discriminatory reason for the elimination of Ms. Colsten's position. [Filing No. 29 at 2; Filing No. 36 at 5.] The Court finds that the District's articulated reason for Ms. Colsten's termination is not based on age and is, therefore, a legitimate

non-discriminatory reason. *See Jajeh v. Cnty. of Cook*, 678 F.3d 560, 573 (7th Cir. 2012) (noting that budget cuts can provide a legitimate, non-discriminatory reason for an adverse employment action).

Accordingly, the burden shifts back to Ms. Colsten to show pretext. "A pretext . . . is a deliberate false-hood." *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007) (internal quotation omitted). In the context of a reduction in force, "[p]retext may be shown by demonstrating that the reduction in force was an excuse to get rid of workers belonging to the protected group." *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 (7th Cir. 2000). Furthermore, "[e]ven if the reduction was otherwise bona fide, a plaintiff may show pretext by demonstrating that the specific reasons given for including her in the reduction were pretextual." *Id*. at 1012-13.

While Ms. Colsten argues that her position, rather than Ms. Harris' position, was eliminated due to her age, she has not provided any evidence of pretext beyond her own assertion. [Filing No. 34.] To establish pretext, Ms. Colsten must present evidence from which the Court may infer that the District did not, at the time of her discharge, honestly believe the reason that it gave for her termination. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 695 (7th Cir. 2000). In the absence of such evidence, the Court cannot "second-guess the business decisions made by an employer." *Id.* Ms. Colsten has not produced "evidence from which a rational factfinder could infer that the [District] lied about its proffered reasons for [her] dismissal." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir. 1994).

Therefore, the Court **GRANTS** the District's Motion for Summary Judgment as to Ms. Colsten's ADEA claim.

11

### C. The Merits of Ms. Colsten's ADA Claim

The District argues that it has met its burden of putting forward evidence that its decision to terminate Ms. Colsten was "based on legitimate, non-discriminatory reasons" and "Ms. Colsten has adduced no evidence that the District's decisions were a pretext for intentional discrimination." [Filing No. 29 at 13-14.]

Ms. Colsten responds with the same arguments she set forth in support of her ADEA claim, as outlined above. [Filing No. 34 at 4.]

As with Ms. Colsten's ADEA claim, the District replies that Ms. Colsten has not "identified any evidence to rebut the District's legitimate, non-discriminatory reason for eliminating the secretarial position or to establish pretext." [Filing No. 36 at 4.]

The ADA prohibits employers from discriminating against a "qualified individual" on the basis of her disability. 42 U.S.C. § 12112(a). "[A]ll discrimination claims present the same basic legal inquiry: At the summary-judgment stage, the proper question to ask is 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [plaintiff's] discharge or other adverse employment action.'" *Ferrill v. Oak Creek-Franklin Joint School District*, 860 F.3d 494, 499 (7th Cir. 2017) (quoting *Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016)).

As discussed above, under the mini-RIF analysis, the Court considers: (1) whether Ms. Colsten has established her prima facie case; (2) whether the District has combatted Ms. Colsten's prima facie case by articulating a legitimate, non-discriminatory reason for her termination; and (3) finally, whether Ms. Colsten can establish that the District's articulated reason for her termination was pretextual. *Bellaver*, 200 F.3d at 495; *Michas*, 209 F.3d at 693. The parties do not dispute that Ms. Colsten was a member of a protected class due to her COPD disability, that

12

she performed in accordance with the District's legitimate expectations, or that she was subjected to an adverse employment action. [Filing No. 29; Filing No. 34; Filing No. 36.] Accordingly, Ms. Colsten has set forth a prima facie case as to her ADA claim under the mini-RIF analysis. The District has again identified the "cost savings and increased efficiencies" as the reason for eliminating Ms. Colsten's position, [Filing No. 29 at 2; Filing No. 36 at 5], which the Court finds is a legitimate non-discriminatory reason for terminating Ms. Colsten's employment, *see Jajeh*, 678 F.3d at 573 (noting that budget cuts can provide a legitimate, non-discriminatory reason for an adverse employment action).

Accordingly, Ms. Colsten must present evidence that the District's articulated reason was pretextual in order to defeat summary judgment. *Paluck,* 221 F.3d at 1012. Ms. Colsten has not pointed to any evidence from which the Court may infer that the District did not, at the time of her discharge, honestly believe the reason that it gave for eliminating her position. *See Michas*, 209 F.3d at 695. When considering claims of employment discrimination, the Court does not "sit as a super-personnel department, second-guessing an employer's business decision." *Coleman v. Donahoe*, 667 F.3d 835, 862 (7th Cir. 2012) (internal citations omitted). Here, the evidence before the Court does not provide any basis to conclude that the proffered reason for Ms. Colsten's termination was pretextual. Therefore, the Court **GRANTS** the District's Motion for Summary Judgment as to Ms. Colsten's ADA claim.

### D.  Ms. Colsten's FMLA Retaliation Claim

The District argues that Ms. Coslten's FMLA retaliation claim fails because she has not established "any evidence of any causal nexus between [her FMLA leave] and the elimination of the secretarial position." [Filing No. 29 at 15-16.]

Ms. Colsten does not respond to the District's argument regarding her FMLA retaliation claim beyond asserting that she "contends her role, rather than Jill Harris's was eliminated because of her . . . substantial use of FMLA leave." [Filing No. 34 at 4.]

The District replies that Ms. Colsten "offers no evidence or argument to rebut the District's analysis" and that "by failing to provide any evidence or argument in support of her FMLA retaliation claim, Ms. Colsten has effectively abandoned her FMLA claim." [Filing No. 36 at 6-7.]

The FMLA prohibits employers from interfering with, restraining, or denying an employee from exercising or attempting to exercise any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). One right provided by the FMLA is an employee's entitlement to take leave from work for a total of 12 workweeks during any 12-month period for the purpose of medical care. 29 U.S.C. § 2615(a)(1). The FMLA also prohibits employers from retaliating against an employee for exercising or attempting to exercise her rights under the FMLA. *See* 29 U.S.C. § 2615(a)(2); 29 U.S.C. § 2615(b); *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012). To succeed on an FMLA retaliation claim, the plaintiff does not need to prove that "retaliation was the only reason for her termination; she may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 995–96 (7th Cir. 2010) (internal citations omitted).

Ms. Colsten does not respond to the District's arguments regarding her FMLA retaliation claim, nor does she put forth any evidence in support of that claim. [Filing No. 34 at 4.] Accordingly, the Court considers Ms. Colsten's FMLA retaliation claim to be waived. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (holding that because the plaintiffs "did not provide the district court with any basis to decide their claims, and did not

respond to the City's arguments, these claims are waived"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *United States v. Turcotte,* 405 F.3d 515, 536 (7th Cir.2005) ("unsupported and undeveloped arguments are waived"). Therefore, the Court **GRANTS** the District's Motion for Summary Judgment as to Ms. Colsten's FMLA retaliation claim.

## IV.
### CONCLUSION

As the Seventh Circuit has made clear, "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Diadenko v. Folino,* 741 F.3d 751, 757-58 (7th Cir. 2013) (quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)). Ms. Colsten has failed to meet her burden at summary judgment and, for the reasons discussed above, the Court **DENIES** the District's Motion for Summary Judgment on its exhaustion of administrative remedies argument, but **GRANTS** the District's Motion for Summary Judgment on the merits of all of Ms. Colsten's claims, [28]. Final judgment shall issue accordingly.

Date: 2/17/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**